Tomás Vega Delgado, Substituted by Lucía Santos, etc. et al., Plaintiffs and Appellants, v. Bartolo Rodríguez et al., Defendants and Appellees.

No. 7249. Argued March 17, 1939.—Decided March 8, 1940.

*Francisco Vizcarrondo* for appellants. *Carlos Santana Becerra* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Leocadio, Alejandrina and Maximiliano de los Santos, plaintiffs in a revendicatory action, appeal from an adverse judgment. They submit that the court erred:

In finding that Lucía de los Santos had not been in possession of all the land in controversy;

In finding that defendant had paid to the municipality of Río Grande taxes on a parcel of land in the barrio of Zarzal, and had continued to pay on a parcel of 12¼ cuerdas in the same barrio during the years 1912–25;

In finding that there was a conflict in the evidence, as far as plaintiffs were concerned.

In finding that defendants had been in actual possession of the 12¼ cuerdas for more than thirty years prior to the filing of the complaint;

In finding that Lucía de los Santos had been in the possession of only 6½ cuerdas in the barrio of Zarzal, where she had lived with her children, now plaintiffs-appellants.

In holding that "with or without god faith and just title" the revendicatory action could not prevail.

The testimony for plaintiffs, as to a pivotal point, follows:

Some fifty or sixty years prior to the date of the trial, Lucía de los Santos, the mother of plaintiffs, had purchased the 18½ cuerdas fron Francisco Parrilla. Lucía de los Santos, with plaintiffs and their father, Basilio Land, lived on the property. Lucía de los Santos brought her brother, Gonzalo de los Santos, to live on the property as a share-cropper with Rosa Rosado de los Santos. At first Gonzalo cultivated the 18½ cuerdas and later, as Lucía's two boys grew older, their unrestricted planting and cultivation of different

portions of the land interfered with Gonzalo's work and at his suggestion, 6½ cuerdas were assigned to them and he continued to cultivate the remaining 12. Lucía lived in one of the two houses that were on the property and Gonzalo on the other. Rosa Rosado remained on the property only five years. After she went away, Gonzalo brought Bartolo Rodríguez to work on the place and after the death of Gonzalo, Rodríguez brought Gregorio and Gerardo Gómez. Gonzalo paid the taxes on the 12 cuerdas because he had the use of that part of the property. After Lucía had obtained her decree of dominion title, she paid the taxes on the whole property.

The testimony for the defense:

María Agustina de los Santos, mother of Lucía, Gila and Gonzalo de los Santos, had purchased the 18½ cuerdas from Francisco Parrilla. She lived with her son Gonzalo on the 12½ cuerdas up to the time of her death. The 18½ cuerdas passed by inheritance to Lucía, Gila and Gonzalo, who divided the property, and Gila later sold her portion to Gonzalo. Gonzalo, some eight or ten years before his death, lost his eyesight, became ill and offered to sell the 12½ cuerdas to Gila. At Gila's suggestion, Rosa Rosado purchased the property; but Gonzalo continued to live in the house with his daughter and her husband, Bartolo Rodríguez, who cared for him up to the time of his death. Rodríguez subsequently purchased the 12½ cuerdas from Rosa Rosado.

Lucía, Gila and Gonzalo all died before the date of the trial. The fact that Gila sold a one-third interest in the property to Gonzalo, and the further fact that Gonzalo sold the 12½ cuerdas to Rosa Rosado, seem to be fairly well established by the testimony of at least one intelligent and apparently disinterested witness. These two practically undisputed facts tend to strengthen the testimony of interested witnesses who testified to Lucía's acquisition by inheritance of a one-third undivided interest in the 18½ cuerdas, and to discredit the testimony of other interested witnesses who testified to Lucía's purchase of the entire property directly from Francisco Parrilla. If Lucía did not purchase the entire property nor any part thereof but acquired only an undivided one-third interest therein by inheritance—and

this view is supported, we think, by a fair preponderance of the evidence—there remains no satisfactory basis for a conclusion that she was ever in actual possession of the entire property.

It is true, of course, that, even according to the testimony for the defense, Lucía, from the date of her mother's death to the date of the division of the 18½ cuerdas, was in the constructive possession of an undivided one-third interest in the entire property. That, however, is not the theory of appellants' first contention. The argument in support of that contention assumes that the witnesses for plaintiffs spoke the truth and that witnesses for the defense did not. If the testimony of witnesses for the defense concerning a sale by Gila to Gonzalo and a sale by Gonzalo to Rosa Rosado was true—and it was, we think—it is a fair inference that their testimony concerning the acquisition by inheritance, a division among the three heirs, and Lucía's actual possession of only 6 cuerdas, was also true. If that testimony was true, the testimony for plaintiffs concerning Lucía's purchase directly from Parrilla, her actual possession of the entire property, her invitation extended to her brother, Gonzalo, to come and live on the property as a share-cropper and his acceptance of that invitation was false. It follows that the district judge did not err in finding that Lucía had not been in possession of all the land in controversy.

Since what we have said practically disposes of the case, we need not discuss the other contentions, *supra,* as developed in the brief for appellants.

It is quite conceivable, of course, that plaintiffs might have made a stronger showing if Lucía de los Santos had not died before the day of the trial. Because of this possibility, we have examined the evidence with more than ordinary care and have found no manifest error in the weighing thereof.

Plaintiffs in a revendicatory action must, of course, recover, if at all, on the strength of their own title. They

cannot rely on any weakness in the title exhibited by defendants.

The judgment appealed from must be affirmed.